# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PAO TATNEFT,

      Petitioner/Plaintiff,

      v.

UKRAINE,

      Respondent/Defendant.

Civil Action No. 17-582 (CKK)

## MEMORANDUM OPINION
(March 19, 2018)

This matter comes before the Court on review of an arbitration award pursuant to the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention" or "Convention") and its implementing legislation, 9 U.S.C. §§ 201-208. Petitioner Pao Tatneft ("Tatneft" or "Petitioner") seeks recognition and enforcement of the Award on the Merits ("Merits Award") conferred in *OAO Tatneft v. Ukraine*, an arbitration conducted under the auspices of the Permanent Court of Arbitration, seated in Paris, France, and pursuant to the 1976 Arbitration Rules of the United Nations Commission on International Trade Law ("UNICITRAL") and the 1998 Agreement between the Government of the Russian Federation and the Cabinet of Ministers of Ukraine on the Encouragement and Mutual Protection of Investments, otherwise known as the Russia-Ukraine Bilateral Investment Treaty. The arbitral tribunal issued its Merits Award in favor of Petitioner on July 29, 2014, Respondent Ukraine ("Ukraine" or "Respondent") was directed to pay Tatneft 112 million in United States Dollars in damages plus interest. That Merits Award was upheld by the Paris Court of Appeal when Ukraine moved to overturn it.

On March 30, 2017, Tatneft filed its Petition to Confirm Arbitral Award and to Enter Judgment in favor of Petitioner, which is opposed by Ukraine. On June 12, 2017, Ukraine filed a motion to stay proceedings in this Court, pending the outcome of a foreign set-aside proceeding, which was opposed by Tatneft. Subsequently, Ukraine filed both a motion to dismiss the petition and a motion for jurisdictional discovery. Because the Petition and three motions filed by Ukraine are interrelated, they will be considered by the Court together.

For the reasons explained below, the Court shall DENY Respondent's Motion to Dismiss, DENY Respondent's Motion for Leave to take Jurisdictional Discovery, DENY Respondent's Motion to Stay, and HOLD IN ABEYANCE Tatneft's Petition for enforcement of the arbitration award until Tatneft submits additional briefing with regard to the issues raised in Ukraine's Opposition to Tatneft's Petition.[1]

## I.    FACTUAL BACKGROUND

### A.  Formation of Ukrtatnafta

Pao Tatneft, formerly known as OAO Tatneft, is a "publicly-traded open joint stock company, established and existing under the laws of the Russian Federation." *See* Pet. ¶ 1.[2] On

---

[1] In connection with this Memorandum Opinion and the accompanying Order, the Court reviewed the following documents: Petition to Enforce, ECF No. 1 ("Pet."); Opposition to Petition, ECF No. 22 ("Opp'n to Pet."); Motion to Stay, ECF No. 14 ("Mot. to Stay"); Opposition to Motion to Stay, ECF No. 16 ("Opp'n to Stay"); Reply to Opposition to Stay, ECF No. 18 ("Reply to Stay"); Motion to Dismiss, ECF No. 21 ("Mot. to Dismiss"); Consolidated Opposition to Motion to Dismiss and Motion for Leave to Seek Discovery, ECF No. 26 ("Consol. Opp'n"); Reply to Opposition to Motion to Dismiss, ECF No. 29 ("Reply to Dismiss'); Motion for Leave to Seek Discovery, ECF No. 23 ("Mot. for Disc."); Consolidated Opposition to Motion to Dismiss and Motion for Leave to Seek Discovery, ECF No. 26 ("Consol. Opp'n"); Reply to Opposition to Motion for Leave to Seek Discovery, ECF No. 30 ("Reply to Disc."). The Court also considered Tatneft's Notice of Filing, ECF No. 31 ("Tatneft's Notice"); Ukraine's Notice of Filing, ECF No. 32 ("Ukraine's Notice"); and the arbitral tribunal's Jurisdiction Decision, ECF No. 27-3 (attached as an exhibit to Tatneft's motion for summary judgment).

[2] Ukraine alleges that Tatneft is a "Tatarstan State-owned oil company under pervasive State control" and further, that it was transformed by the Republic of Tatarstan —a political

July 4, 1995, Tatarstan and Ukraine entered into an agreement to create CJSC Ukrtatnafta Transnational Financial and Industrial Oil Company ("Ukrtatnafta"), a Ukrainian joint stock company that operates the largest oil refinery in Ukraine, with Tatneft, Ukraine and Tatarstan as its three major shareholders.[3]  *See* Declaration of Jonathan I. Blackman in support of Petition ("Blackman Decl."), ECF No. 1-3, Ex. A (Merits Award), ECF No.1-4, ¶¶ 57-59.[4]  Tatneft and Tatarstan were initially slated to make capital contributions of oil-related fixed assets to Ukrtatnafta, but later agreed to make contributions of cash and other assets in 1997 and 1998. Merits Award ¶¶ 61, 174, 176.

In 1998 and 1999, the United States-based Seagroup International, Inc. ("Seagroup") and Switzerland-based AmRuz Trading Co. ("AmRuz") acquired shares in Ukrtatnafta, and together with Tatneft and Tatarstan (the four entities are collectively referred to as the "Tatarstan Shareholders"), they owned a majority 56% of Ukrtatnafta's shares, and they agreed to vote as a bloc. *See id.* ¶¶ 141, 562 n.903.  In January 2007, the Ukrainian Privat Group acquired a 1% interest in Ukrtatnafta.  *Id.* ¶¶ 143, 223, 268. The Privat Group subsequently obtained Ukrainian judgments that purportedly invalidated the 1997 and 1998 shareholder resolutions whereby Tatartan and Tatneft obtained their interests in Ukrtatnafta, and resulted in the Tatarstan Shareholders being barred from management of Ukrtatnafta and ownership of its shares.  *Id.* ¶¶ 126-28, 147, 156, 159-62, 169-71, 174-76, 221-38, 276-80, 316, 320, 325, 465.

---

subdivision of the Russian Federation — into a shareholding company in 1994.  Mot. to Dismiss at 8.  The Court notes that the page number citations refer to the numbers assigned by the Court's Electronic Case Filing system.

[3] Ukraine's shares were held by its state-owned oil and gas company, NJSC Naftogaz ("Naftogaz") after 2004.  Mertis Award at 141, 562 n. 903.

[4] The Merits Award [Ex. A] is filed on the Court docket in four parts at ECF No. 1-4 through ECF No. 1-7, because of the length of the document.

### B. Arbitral Tribunal Proceedings

On December 11, 2007, Tatneft sent a Notice of Dispute to Ukraine, requesting negotiations pursuant to Article 9(1) of the Russia-Ukraine Bilateral Investment Treaty ("Russia-Ukraine BIT" or "BIT"). Merits Award ¶ 6; Blackman Decl., ECF No. 1-3, Ex. B (Russia-Ukraine BIT), ECF No. 1-8, Art. 9(1). On May 21, 2008, after trying to resolve the dispute for approximately five months, Tatneft served Ukraine with a Notice of Arbitration and Statement of Claim under UNCITRAL, alleging that Ukraine had violated its obligations with regard to granting legal protection to and disallowing discrimination against investors from Russia, such as Tatneft, under the Russia-Ukraine BIT. Merits Award ¶ 7; Russia-Ukraine BIT Arts. 2, 3(1).

Following written submissions and a hearing, the arbitral tribunal issued a September 28, 2010 decision confirming its jurisdiction over Tatneft's claims (the "Jurisdiction Decision"), and after receiving additional written submissions and documents, the arbitral tribunal held a merits hearing from March 18, 2013 to March 27, 2013, wherein fact and expert witnesses testified. Award ¶¶ 6-46. On July 29, 2014, the arbitral tribunal issued a Merits Award, whereby it concluded that Ukraine's actions resulted in a "total deprivation of [Tatneft's] rights as a shareholder of Ukrtatnafta" and further, that Ukraine had failed under the Russia-Ukraine BIT to provide "fair and equitable treatment" (FET) to Tatneft. Merits Award ¶¶ 464, 412. Ukraine was ordered to "pay [Tatneft] the amount of US$ 112 million as compensation for its breaches of the Russia-Ukraine BIT" along with interest at the U.S. dollar LIBOR rate plus 3% compounded every three months, with further instructions about the accrual of interest. *Id.* ¶ 642(1)-(3).

### C. Proceedings following the Arbitration

On August 27, 2014, Ukraine brought an action before the Paris Court of Appeal in

France to annul both the Merits Award and the earlier Jurisdiction Decision.  Blackman Decl. ¶ 5.
On November 29, 2016, the Paris Court of Appeal rejected Ukraine's annulment request, upheld
both the Jurisdiction Decision and the Merits Award, and ordered Ukraine to pay fees and costs to
Tatneft. *Id.*  Ukraine filed a subsequent request for appeal, on March 21, 2017, to the French Court
of Cassation.

On December 29, 2016, Tatneft sent a letter to Ukraine demanding payment of the Merits
Award amount and noting that if payment was not made by February 15, 2017, Tatneft would
commence enforcement proceedings. *See* Blackman Decl., ECF No. 1-3, Ex. C (Dec. 29, 2016
Demand Letter), ECF No. 1-9, at 2.  Tatneft filed its Petition to Confirm Arbitral Award on March
30, 2017, seeking recognition of the award in this Court.  Ukraine requested that this Court stay
its determination of the Petition pending the decision in the French Court of Cassation.  Shortly
after the briefing on the stay motion became ripe, Ukraine filed its opposition to Tatneft's Petition,
and also filed a motion to dismiss and motion for jurisdictional discovery.[5]  Ukraine's opposition
to the Petition focuses on alleged doubts regarding the arbitrator's impartiality and independence,
and asserts that recognition and enforcement of the award would be contrary to United States'
public policy.

In its motion to dismiss Tatneft's Petition, Ukraine argues that this Court lacks subject
matter jurisdiction because Ukraine is entitled to foreign sovereign immunity and further, that
dismissal is warranted on grounds of *forum non conveniens*.   With regard to the jurisdictional
challenge, Ukraine contends more specifically that the arbitration exception in Section 1605(a)(6)

---

[5] The Court indicated that it would consider Ukraine's jurisdictional objection before ruling on
any motion to stay. *See* July 10, 2017 Minute Order.  In this Memorandum Opinion, the motion
to stay will be considered after consideration of the motion to dismiss and motion for
jurisdictional discovery.

of the Foreign Sovereign Immunities Act does not apply because Tatneft is not a "private party" and the award was not made "pursuant to" any agreement to arbitrate. Ukraine moves for permission to conduct jurisdictional discovery in the event that this Court does not grant its motion to dismiss. Petitioner Tatneft opposes all of Ukraine's motions.

## II. LEGAL STANDARD

Prior to beginning an analysis of the arguments raised in the motions and the petition which are pending before the Court, it may be useful to briefly set out the legal provisions underlying such analysis, *i.e.*, the Foreign Sovereign Immunities Act and the arbitration exception thereto, which govern this Court's jurisdiction over Respondent Ukraine, and The New York Convention, which governs enforcement of foreign arbitration awards.

### A. Foreign Sovereign Immunities Act and the Arbitration Exception

The Foreign Sovereign Immunities Act of 1976 ("FSIA"), codified at 28 U.S.C. §§1330, 1332, 1391(f), 1441(d), and 1602-1611, is the "sole basis for obtaining jurisdiction over a foreign state in the courts of [the United States]." *Belize Social Development Ltd. v. Government of Belize*, 794 F.3d 99, 101 (D.C. Cir. 2015) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 433 (1989)). When considering enforcement of an arbitral award against a foreign state, the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330, *et seq* "is 'the sole basis for obtaining jurisdiction over a foreign state in our courts.'" *Nemariam v Fed. Dem. Rep. of Ethiopia*, 491 F.3d 470, 474 (D.C. Cir. 2007) (quoting *Argentine Rep. v Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989)). Foreign states enjoy sovereign immunity under the FSIA unless an international agreement or one of several exceptions in the statute provides otherwise. *See generally* FSIA; *see also Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000). Accordingly, "[i]n the absence of an applicable exception, the foreign sovereign's

immunity is complete [and] [t]]he district court lacks subject matter jurisdiction over the plaintiff's case." *Id.* (citation and internal quotation marks omitted).[6]  Because "subject matter jurisdiction in any such action depends on the existence of one of the specified exceptions. . . [a]t the threshold of every action in a District Court against a foreign state. . . the court must satisfy itself that one of the exceptions applies[.]" *Verlinder B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493-94 (1983); *see also Saudi Arabia v Nelson*, 507 U.S. 349, 355 (1993) ("[U]ness a specified exception applies, a federal court lacks subject-matter jurisdiction over a claims against a foreign state." (citations omitted))..

The FISA provides an exception to foreign sovereign immunity for actions to confirm certain arbitration awards, as follows:

> [a] foreign state shall not be immune from the jurisdiction of courts of the United States in any case – . . . in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship . . . or to confirm an award made pursuant to such an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.

28 U.S.C. § 1605(a)(6)(B).

### B.  The New York Convention

The 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards, also known as the New York Convention, codified into United States law through the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 *et seq.,* is a multilateral treaty providing for "the recognition and enforcement of arbitral awards" across international borders.  Pursuant to Section 202 of the FAA, "[a]n arbitration agreement or arbitral award arising out of a legal relationship,

---

[6] There is no dispute that Ukraine is a foreign state pursuant to 28 U.S.C. Section 1603(a).

whether contractual or not, which is considered as commercial . . . falls under the [New York] Convention." 9 U.S.C. § 202. The "district courts of the United States . . . shall have original jurisdiction over such an action or proceeding [falling under the Convention], regardless of the amount in controversy." 9 U.S.C. § 203. *See also BCB Holdings Ltd. v Gov't of Belize*, 110 F. Supp. 3d 233, 242 (D.D.C. 2015) (finding that the FAA affirms that the purpose of the New York Convention is to encourage recognition and enforcement of commercial arbitration agreements in international contracts), *aff'd*, 650 F. App'x 17 (D.C. Cir. 2016), *cert den.*, 137 S. Ct. 619 (2017). This Circuit has made clear that "the New York Convention is exactly the sort of treaty Congress intended to include in the arbitration exception." *Creighton Ltd. v. Gov't of the State of Qatar*, 181 F.3d 118, 123 (D.C. Cir. 1999). The arbitration exception set forth in Section 1605(a)(6) "by its terms" applies to actions to confirm arbitration awards under the New York Convention. *Id.*

Federal courts in the United States have minimal discretion to refuse to confirm an arbitration award under the FAA, which provides that the district court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [ ] Convention." 9 U.S.C. § 207; *see TermoRio S.A. E.S.P. v. Electanta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007) (A district court "may refuse to enforce the award [under the New York Convention] only on the grounds explicitly set forth in Article V of the Convention."), *cert denied*, 552 U.S. 1038 (2007); *see also Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011) ("Confirmation proceedings are generally summary in nature" because "the New York Convention provides only several narrow circumstances where a court may deny confirmation of an arbitral award.") (citation omitted).

Pursuant to the New York Convention: (1) an arbitral award may be refused at the request of the party against whom it is invoked where (a) the parties to the agreement were under some

incapacity; (b) the party against whom the award is invoked did not receive proper notice of the arbitration proceedings; (c) the award deals with an issue not falling within the terms of the parties' submission to arbitration; (d) the composition of the arbitral tribunal was not in accordance with the parties' agreement; (e) the award has not yet become binding; or (2) recognition and enforcement of an arbitral award may be refused in the country where it is sought if (a) the issue arbitrated is not capable of being arbitrated under the law or (b) it would be contrary to the public policy of such country. New York Convention, Art. V, June 10, 1958, 21 U.S.T. 2517, 1970 WL 104417 (effective for the United States on Dec. 29, 1970).

Ukraine argues against confirmation and enforcement of the Merits Award on N.Y. Convention Article V grounds; namely, Ukraine alleges there was a lack of impartiality of the arbitral tribunal, and further, that recognition and enforcement would be contrary to the public policy of the United States. Ukraine's previously-noted challenges based on sovereign immunity and *forum non conveniens* are outside of the confines of Article V and were raised in its Motion to Dismiss as opposed to its response to the Petition. The Court will first address Ukraine's jurisdictional and other non-Article V arguments before analyzing the merits of its Article V arguments.

## III.    DISCUSSION

### A. Ukraine's Motion to Dismiss is based on alleged lack of subject matter jurisdiction

Before a court may exercise subject matter jurisdiction over a proceeding to enforce an arbitral award against a foreign sovereign, first, "there must be a basis upon which a court in the United States may enforce a foreign arbitral award" and second, the foreign sovereign "must not enjoy sovereign immunity from such an enforcement action." *Diag Human, S.E. v. Czech Republic-Ministry of Health*, 824 F.3d 131, 133-34 (D.C. Cir. 2016), *cert denied*, 137 S. Ct. 1068

(2017). In the event that the court lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3); *see Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety"). This Court considers the two *Diag Human* factors in reverse order, first considering the applicability of the foreign arbitration exception to sovereign immunity before examining the New York Convention, which is the basis for confirmation of an arbitral award.

Under the FSIA, "a foreign state is presumptively immune from the jurisdiction of the United States courts," and "unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Accordingly, a district court charged with consideration of an action brought against a foreign state "must satisfy itself that one of the exceptions applies." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493-94 (1983); *see also Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1548 (D.C. Cir. 1987) ("If an exception to the main rule of sovereign immunity applies, then the FSIA confers subject matter jurisdiction on the district courts.").

The petitioner bears the initial burden of supporting its claim that a FSIA exception applies, and this burden of production may be met where a party seeking to confirm an award produces "the BIT, [its] notice of arbitration against [the foreign sovereign], and the tribunal's arbitration decision." *Chevron Corp. v. Ecuador*, 795 F.3d 200, 204 (D.C. Cir. 2015), *cert denied*, 136 S. Ct. 2410 (2016). In the instant case, Tatneft has satisfied its burden of production pursuant to *Chevron*. The burden of persuasion then shifts to Ukraine, the foreign sovereign that is claiming immunity, "to establish the absence of the factual basis by a preponderance of the evidence." *Id.*; *see also Belize Social Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 102 (D.C. Cir. 2015) ("Where a plaintiff has asserted jurisdiction under the FSIA and the defendant foreign state has asserted the

jurisdictional defense of immunity, the defendant state bears the burden of proving that the plaintiff's allegations do not bring its case within a statutory exception to immunity.") (citation and internal quotation marks omitted), *cert denied*, 137 S. Ct. 617 (2017).

### 1. Arbitration Exception to FSIA

Tatneft asserts that this Court may exercise subject matter jurisdiction in this case because the FSIA provides an exception to foreign sovereign immunity for actions to confirm arbitration awards that are made pursuant to an agreement to arbitrate and are governed by an international treaty in force in the United States calling for the recognition and enforcement of arbitral awards.[7] *See* 28 U.S.C. § 1605(a)(6)(B). Tatneft asserts that its Petition falls under this exception because the Merits Award was made pursuant to the Russia – Ukraine BIT and it is governed by the New York Convention. *See* Pet. ¶¶ 3, 11, 16.

Tatneft's assertions are confirmed, first, by the language of the Merits Award, which indicates that it was made pursuant to the BIT, an agreement that provides for arbitration. Article 9 of the Russia-Ukraine BIT provides in part that:

1. Any dispute between one Contracting Party and an investor of the other Contracting Party arising in connection with investments, including disputes regarding the amount, terms of and procedure for payment of the compensation . . ., shall be set out in a written notification accompanied by detailed comments which the investor shall send to the Contracting Party involved in a dispute. The parties to the dispute shall attempt to resolve that dispute where possible by negotiation.
2. In the event that the dispute is not resolved within six months of the date of the written notification , . . ., the dispute shall be referred to be considered by:
       *        *        *
(c) an ad hoc arbitration tribunal, in conformity with the Arbitration Rules of the United Nations Commission on International Trade Law (UNICITRAL).
3. The arbitration award shall be final and binding upon both parties to the dispute. . . .

---

[7] Tatneft argues alternatively that the Court has jurisdiction under Section 1605(a)(1) because Ukraine waived sovereign immunity when it signed the New York Convention, although the Court notes that this basis for jurisdiction was not raised by Tatneft in its Petition.

Russia-Ukraine BIT, ECF No. 1-8, Article 9. *See, e.g.,* Merits Award, ECF No. 1-4, at 16, 17, 23 (referring to obligations "under the Russia-Ukraine BIT" and describing the subject of the arbitration as concerning "the lawfulness under the Russia-Ukraine BIT"); ECF No. 1-5, at 43 (setting out Tatneft's claims under the Russia-Ukraine BIT).

Second, there is no dispute that the Merits Award is governed by the New York Convention, which controls when a party moves for recognition and enforcement of an arbitral award that was made in the territory of a State other than the State where such award recognition and enforcement is sought. *See generally* New York Convention, 21 U.S.T. 2517. Awards are enforceable in the courts of any signatory so long as "the place of the award . . . is in the territory of party to the Convention." *Creighton*, 181 F.3d at 121 (quotation omitted). The arbitration in this case was held in Paris, and France is a party to the New York Convention; thus, the Merits Award is governed by the Convention. *See* Pet. ¶¶ 19, 23; U.S. Dept. of State, Treaties in Force: A List of Treaties and Other International Agreements of the United States in Force on January 1, 2007, § 2 at 12, *available at* http://www.state.gov/documents/organization/89668.pdf.

Ukraine argues however that the arbitration exception to foreign sovereign immunity does not apply because: (1) Tatneft is a state-controlled entity and not a "private party" as per the arbitration exception to the FSIA; (2) the Merits Award, which was based on the "fair and equitable treatment" provision, was not made "pursuant to" any agreement to arbitrate because that "fair and equitable treatment" provision was excluded from the Russia-Ukraine BIT and; (3) the Merits Award awarded the "vast majority of the damages for the shares of Swiss and American companies that were not covered by Ukraine's offer to arbitrate with Russian investors" because Tatneft lacked standing to assert claims on behalf of AmRuz and Seagroup. *See generally* Mot. to Dismiss at 13-33.

In this case, "the [arbitral] tribunal bifurcated the proceedings in order to first consider Ukraine's various 'objections to jurisdiction and admissibility.'" *See* Supplemental Blackman Decl., ECF No. 27-2, Ex. A (Jurisdiction Decision), ECF No. 27-3, ¶¶ 16-19.[8] Tatneft contends that "[b]etween February 20, 2009 and December 14, 2009, the parties [ ] submitted extensive written briefing solely addressing [ ] these threshold [jurisdictional] issues." Consol. Opp'n at 17, Jurisdiction Decision ¶¶ 17-32. This was followed by a three-day hearing in The Hague, which resulted in the tribunal issuing an 87-page Jurisdiction Decision confirming its competence to hear the dispute and the "admissibility" of Tatneft's claims under the Russia-Ukraine BIT and applicable international law.[9] *See* Jurisdiction Decision ¶¶ 75-77, 100, 152, 164, 200, 224, 238, 252-53. In the Jurisdiction Decision, the arbitral tribunal explained that its consideration of issues relating to jurisdiction and admissibility was undertaken at the behest of Ukraine. "Respondent [Ukraine] made in its Statement of Defense [a request] that the Tribunal rule on the issue of jurisdiction as a preliminary question, in accordance with Article 21(4) of the UNCITRAL Rules." Jurisdiction Decision ¶ 17.

The arbitral tribunal's Jurisdiction Decision addressed and rebutted a variety of jurisdictional objections raised by Ukraine, including that: (1) the Russia-Ukraine BIT does not

[8] Tatneft references the Jurisdiction Decision in its Consolidated Opposition.

[9] Tatneft explains that in the context of this arbitration, "an "admissibility" objection goes to the question of whether the claim should be heard at all (e.g., whether the claim is time barred or subject to some similar legal defect), unlike a "jurisdictional" objection, which goes to the tribunal's power to decide the claim (whether there is a valid agreement to arbitrate)." Consol. Opp'n at 17, n.6. (referencing Jan Paulsson, *Jurisdiction and Admissibility,* Global Reflections on International Law, Commerce and Dispute Resolution 601 (Gerald Aksen *et al.* eds. 2005)). Tatneft further explains that "admissibility objections are considered merits issues for the arbitral tribunal, not the courts, to decide." *Id.*; *see* Case Comment, *Judicial Review of Investor Arbitration Awards: Proposals to Navigate the Twilight Zone Between Jurisdiction and Admissibility,* 9 Dispute Resolution Int'l 85, 87 n.4 (2014) ("[I]f parties have consented to the jurisdiction of a given tribunal, its determinations as to the admissibility of claims should be final.") (citation omitted).

apply to disputes concerning Ukrtatnafta; (2) Tatneft is not an investor within the meaning of the BIT because it is controlled by the Government of Tatarstan; (3) Tatneft's participation in Ukrtatnafta is not an investment within the meaning of the BIT; and (4) Tatneft's participation in Ukrtatnafta is not in conformity with Ukrainian legislation. The tribunal further addressed a number of admissibility objections raised by Ukraine, including that: (1) Tatneft has no standing on behalf of Amruz and SeaGroup; (2) Tatneft has no standing to claim for unpaid oil deliveries; and (3) Tatneft failed to state an arguable case concerning alleged violations of its rights under the BIT and for damages. *See* Jurisdiction Decision at 30-49 (addressing objections to jurisdiction); 72-88 (addressing objections to admissibility).

With regard to the allegations that Ukraine is relying on in this case — that Tatneft is not a private party, the "fair and equitable treatment" provision is not incorporated in the BIT, and Tatneft has no standing on behalf of AmRuz and SeaGroup — the Court notes that the tribunal made specific findings in favor of Tatneft on each of these claims. By way of example, the tribunal found that "[t]here is undoubtedly a government presence in Tatneft [ ]," but it concluded that "business-related aspects predominate in Tatneft's operations and [ ] it is thus entitled to claim as a private investor under the Russia-Ukraine BIT." Jurisdiction Decision ¶¶ 129, 151. The tribunal characterized the issue regarding the fair and equitable treatment provision as "a matter for the merits," and upon consideration of the merits, the tribunal found that Ukraine agreed to provide fair and equitable treatment to Tatneft by incorporation through the most-favored-nation clause, but failed to provide such treatment. *See* Jurisdiction Decision ¶ 249; Merits Award ¶¶ 391-413. Finally, when confronted with Ukraine's assertions that Tatneft could not make a claim on behalf of SeaGroup and AmRuz, the tribunal considered and rejected these assertions in the context of the Jurisdiction Decision. *See* Jurisdiction Decision Paragraphs 202-224.

By means of its Motion to Dismiss, Ukraine is asking this Court to revisit its previously-raised jurisdiction and admissibility objections, in the context of this Court's determination whether or not to apply the arbitration exception to Ukraine's foreign sovereign immunity. Factually similar to the instant case is *Chevron Corp.*, where Ecuador, the foreign sovereign, asserted that the arbitration exception to the FSIA "required the District Court to make a *de novo* determination of whether Ecuador's offer to arbitrate in the BIT encompassed Chevron's breach of contract claims" because, according to Ecuador, if such claims were not covered by the BIT, there was no agreement to arbitrate. 795 F.3d at 205. Ecuador viewed arbitrability as a jurisdictional question to be addressed by the Court. *Id.* The D.C. Circuit rejected this argument, noting that "Ecuador conflates the jurisdictional standard of the FSIA with the standard for review under the New York Convention," and finding that the District Court's "jurisdictional task" was "to determine whether Ecuador had sufficiently rebutted the presumption that the BIT and Chevron's notice of arbitration constituted an agreement to arbitrate." *Id.*

In the underlying *Chevron* decision, Judge James E. Boasberg rejected Ecuador's suggestion that the Court conduct an independent *de novo* determination of the arbitrability of a dispute in connection with the FSIA's arbitration exception, noting that:

> Such an argument appears to be an attempt by Ecuador to get two bites at the apple of the merits of its dispute with Chevron, by seeking to have this Court separately determine the arbitrability of the underlying dispute under both the FSIA and the New York Convention. The inquiry Ecuador suggests runs counter to the clear teaching of this Circuit on the purpose and role of the FSIA. The FSIA is a jurisdictional statute that speak[s] to the power of the court rather than to the rights and obligations of the parties. Likewise § 1605(a) does not affect the contractual right of the parties to arbitration but only the tribunal that may hear a dispute concerning enforcement of an arbitral award. Inquiring into the merits of the enforcement dispute — that is, the arbitrability of the underlying claims — would involve an inquiry into the contractual rights of the parties to arbitration and would thus be beyond the reach of the FSIA's cabined jurisdictional inquiry.

*Chevron Corp. v. Republic of Ecuador*, 949 F.Supp.2d 57, 63 (D.D.C. 2013) (internal citations and quotation marks omitted), *aff'd*, 795 F.3d 200 (D.C. Cir. 2015). Judge Boasberg applied an approach consistent with many other federal courts engaging in only two jurisdictional inquiries including "whether the award was made pursuant to an appropriate arbitration agreement with a foreign state and whether the award is or may be governed by a relevant recognition treaty." *Id.* Citation and internal quotation marks omitted). FSIA "allows federal courts to exercise jurisdiction over [a foreign sovereign] in order to consider an action to confirm or enforce the award" regardless of any dispute over whether the tribunal was competent to hear the arbitration in the first place. *Chevron*, 795 F. 3d at 206; *see BCB Holdings Ltd. v. Govt. of Belize*, 110 F. Supp. 3d 233, 244 (D.D.C. 2015) ("Inquiring into the merits of whether this dispute was rightly submitted to arbitration is beyond the scope of the FSIA's jurisdictional framework."), *aff'd*, 650 Fed. App'x 17 (D.C. Cir. 2016).

In *Crystallex Internt'l Corp. v. Bolivarian Rep. of Venzuela,* 244 F. Supp. 3d 100 ((D.D.C. 2017), the foreign sovereign argued that the tribunal exceeded the scope of its authority by addressing matters not consigned to arbitration under the applicable BIT. In determining the amount of deference to grant the tribunal's findings, the foreign sovereign relied on Supreme Court cases distinguishing between the standard of review for questions of "arbitrability" and more procedural issues. *Id.* at 111. *See generally BG Group PLC v. Republic* of Argentina, --- U.S. ---, 134 S. Ct. 1198, 188 L. Ed. 2d 220 (2014) (holding that issues of arbitrability presumptively receive de novo review, while procedural jurisdiction questions presumptively receive deferential review.) The Court in *Crystallex* found however that:

> *BG Group* left intact the principle that "it is up to the parties to determine whether a particular matter is primarily for arbitrators or for courts to decide." *Id.* at 1206. In other words, when the parties explicitly agree that the tribunal should decide the scope of its own inquiry, then courts should review that determination deferentially. *See First Options of*

*Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 131 L. Ed. 2d 185 (1995) ("[A]court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration.")

*Crystallex*, 244 F. Supp. 3d at 111; *see also Gold Reserve Inc. v. Bolivarian Republic of Venezuela*, 146 F. Supp.3d 112, 121 (D.D.C. 2015) ("In cases where both parties have clearly and unmistakably delegated the question of arbitrability to the arbitrator, a court 'should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances.'") (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

. In the instant case, Ukraine specifically requested that the arbitral tribunal first rule on issues of jurisdiction prior to considering the merits of Tatneft's claims. In the proceeding before this Court, Ukraine challenges the confirmation and enforcement of the foreign arbitral award through both a motion to dismiss as well as its response to the Petition, and as such, similar to the scenario in *Chevron*, *supra.*, Ukraine appears to attempt to get "two bites at the apple of the merits of its dispute with [Tatneft], by seeking to have this Court separately determine the arbitrability of the underlying dispute under both the FSIA and the New York Convention," which is contrary to the "teaching of this Circuit on the purpose and role of the FSIA." *Chevron*, 949 F. Supp. 2d at 63. Accordingly, as to the application of an exception to immunity under FSIA, the Court is satisfied that the FSIA's arbitration exception applies, and the Court has subject-matter jurisdiction to enforce the Award, and Ukraine's motion to dismiss on jurisdictional grounds shall be denied. Regardless, the Court considers the merits of Ukraine's argument pursuant to Article V of the Convention in Section III D of this opinion.

## 2. Implied Waiver Exception to FSIA

Tatneft argues in the alternative that this Court has jurisdiction pursuant to 28 U.S.C. § 1605(a)(1) because Ukraine waived its sovereign immunity under the theory of implied waiver. Ukraine contends that Tatneft waived this argument when it failed to raise it in the Petition. Tatneft acknowledges that Section 1605(a)(1) was not specifically mentioned in its Petition, which relies upon the exception in Section 1605(a)(6); however, Tatneft alleges that the facts supporting this argument (reliance on the New York Convention) are recited in Tatneft's Petition. Tatneft further contends that this argument has not been waived because the usual rules of pleading — whereby a plaintiff may not amend its complaint through briefs in opposition to a motion to dismiss — do not apply to this enforcement proceeding. *See TermoRio E.S.P. v. Electranta S.P.*, 487 F.3d 928, 940 (D.C. Cir. 2007) ("motions to enforce arbitral awards should proceed under motions practice, not notice pleading"), *cert denied*, 552 U.S. 1038 (2007). Ukraine argues that there should be no difference in the treatment of a complaint or petition, but the cases cited by Ukraine in support of this proposition do not involve foreign arbitration award petitions. The Court finds that while 1605(a)(1) was not specifically mentioned in the Petition, Ukraine had ample opportunity to respond to this argument in its Reply to the Motion to Dismiss, and accordingly, the theory of implied waiver will be considered by this Court in connection with the briefing on that motion.[10]

The FSIA does not define "implied waiver." *Creighton Ltd. v. Gov't of State of Qatar*, 181 F. 3d 118, 122 (D.C. Cir. 1999). This Circuit has, however, "followed the 'virtually unanimous' precedents construing the implied waiver provision narrowly." *Id.* (quoting *Shapiro v Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir. 1991)). "Implicit in § 1605(a)(1) is the requirement that the

---

[10] The parties consented to an extended briefing schedule on the opposition and reply to the motion to dismiss. *See* August 7, 2017 Minute Order.

foreign state has intended to waive its sovereign immunity." *Creighton*. 181 F. 3d at 122. This Circuit has acknowledged the implied waiver of sovereign immunity in three circumstances: "(1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that the law of a particular country governs a contract; or (3) a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity." *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990). Courts have been "reluctant to stray beyond these examples" when considering claims of implicit waiver of sovereign immunity. *Princz v. Federal Republic of Germany*, 26 F. 3d 1166, 1174 (D. C. Cir. 1994), *cert denied*, 513 U.S. 1121 (1995).

Courts have found an implicit waiver under § 1605(a)(1) in "cases involving contracts in which a foreign state has agreed to arbitrate disputes without specifying jurisdiction in a particular country or forum" but "most courts have refused to find an implicit waiver of immunity to suit in American courts from a contract clause providing for arbitration in a country other than the United States."[11] *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 377 (7th Cir. 1985); s*ee also Creighton*, 181 F. 3d at 123 (examining district court cases finding an implied waiver based on the foreign sovereign's agreement to arbitrate in the territory of a state that had signed the New

---

[11] The Russia-Ukraine BIT provides that disputes shall be considered by:
a) a competent court or an arbitration tribunal of the Contracting Party in whose territory the investments were made;
b) the Arbitration Institute of the Stockholm Chamber of Commerce;
c) an ad hoc arbitration tribunal in accordance with the Arbitration Rules of the United Nations Commission on International Trade Law (UNCITRAL).

Russia-Ukraine BIT, ECF No. 1-8, at Article 9.

Legislation based on the UNCITRAL Model Law has been adopted in 109 jurisdictions, including certain states within the United States. See "Status UNCITRAL Model Law on International Commercial Arbitration (1985), with amendments as adopted in 2006," http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/1985Model_arbitration_status.html.

York Convention, and distinguishing between those in which the foreign sovereign was a signatory to the Convention and those in which the foreign sovereign was not a signatory to the Convention). In *Creighton*, the Circuit Court reasoned that "Qatar not having signed the Convention, we do not think that its agreement to arbitrate in a signatory country, without more, demonstrates the requisite intent to waive its sovereign immunity in the United States." *Id.* In making this distinction, the D.C. Circuit adopted the Second Circuit's reasoning in *Seetransport Wiling Trader v. Navimpex Centrala Navala* that if a foreign state agrees to arbitrate in a country that has signed the New York Convention, it waives its sovereign immunity in all of the signatory countries by virtue of the fact that "when a country becomes a signatory to the Convention, by the very provisions of the Convention, the signatory state must have contemplated enforcement actions in other signatory states." *Creighton*, 181 F.3d at 123, quoting *Seetransport*, 989 F.2d 572, 578 (2d Cir. 1993); *see Stati v. Republic of Kazakhstan*, 199 F. Supp. 3d 179, 189 (D.D.C. 2016) (finding an implied waiver of sovereign immunity where Kazakhstan agreed to arbitrate in Sweden, and Kazakhstan, Sweden and the United States are all signatories to the New York Convention).

In the instant case, Ukraine agreed to arbitrate in the territory of a state [France] that has signed the New York Convention, and it is also a signatory to the Convention; thus, it should have anticipated enforcement actions in signatory states. *See* "Contracting States," *New York Arb. Convention*, http://www.newyorkconvention.org/countries. Accordingly, following the standard set forth in *Creighton*, this Court finds that implied waiver under Section 1605(a)(1) is an alternative grounds for jurisdiction over Ukraine, and Ukraine's motion to dismiss on jurisdictional grounds shall be DENIED.

**B. Ukraine's Motion to Dismiss asserts that the United States is a Forum Non Conveniens**

Ukraine also argues that dismissal is warranted on *forum non conveniens* grounds. *See* Mot. to Dismiss at 47-50. Under this doctrine, the Court "must decide (1) whether an adequate alternative forum for the dispute is available and, if so, (2) whether a balancing of private and public interest factors strongly favors dismissal." *Agudas Chisidei Chabad of U.S. v. Russian Fed'n*, 528 F.3d 934, 950 (D.C. Cir. 2008) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22 (1981)). There is a "substantial presumption in favor of a plaintiff's choice of forum," *id.*, and [t]he burden is on the defendant[ ] to satisfy the threshold requirement of demonstrating the existence of an adequate alternate forum with jurisdiction over the case." *De Csepel v. Republic of Hungary*, 808 F. Supp. 2d 113, 138 (D.D.C. 2011), *aff'd in part, rev'd in part on other grounds*, 714 F.3d 591 (D.C. Cir. 2013).

This Court must determine first if an alternative forum "is both available and adequate." *MBI Grp., Inc. v. Credit Foncier du Cameroun*, 616 F.3d 568, 571 (D.C. Cir. 2010). An alternative forum is ordinarily adequate if the defendants are amenable to service of process there and the forum permits litigation of the subject matter of the dispute. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22 (1981). If the remedy provided by the alternative forum "is so clearly inadequate or unsatisfactory that it is no remedy at all," the district court "may conclude that dismissal would not be in the interests of justice." *Id.* at 254. Tatneft argues that Ukraine cannot satisfy the first step of the *forum non conveniens* test because the D.C. Circuit has plainly stated that there is no alterative forum that has jurisdiction to attach the commercial property of a foreign nation located in the United States. *TMR Energy, Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296, 303 (D.C. Cir. 2005).

In *TMR*, the petitioner moved to enforce an arbitration award obtained in Sweden against Ukraine, and the respondent argued that the courts of Ukraine and Sweden were adequate forums in which to enforce the award. The petitioner countered however that only a United States court could attach the commercial property of a foreign state, which was located in the United States, upon judgment entered by a United States court. *Id.* Ukraine asserts that Tatneft's reliance on *TMR* is misplaced because, in this case, "Tatneft has not attempted to identify any Ukrainian commercial property in the United States that could be subject to attachment [and thus,] the existence of Ukraine's commercial assets in the United States is *hypothetical and speculative*." Reply to Dismiss at 31-32 (emphasis in original).

Ukraine's argument ignores the reasoning set forth by the D.C. Circuit [in *TMR*] in response to the Respondent's argument that "the district court should have dismissed this action because [it] had no assets in the United States against which a judgment [could] be enforced." 411 F.3d at 304. The D.C. Circuit explained that:

> Even if [Respondent] currently has no attachable property in the United States, however, it may own property here in the future, and [Petitioner's] having a judgment in hand will expedite the process of attachment. In any event, the possibility that the judgment of the district court may go unenforced does not bear upon whether that court is an inconvenient forum in which to defend. [Respondent] also speculates that [Petitioner's] true motive is to go after the property of the State of Ukraine, but [Petitioner's] motive is immaterial and whether [Petitioner] could properly attach such property is not before us.

> Because there is no other forum in which [Petitioner] could reach the [Respondent's] property, if any, in the United States, we affirm the district court's refusal to dismiss this action based upon the doctrine of *forum non conveniens*.

*TMR*, 411 F.3d at 303-04; *see generally Belize Social Dev. Ltd. v. Gov't of Belize*, 5 F. Supp. 3d 25, 34 (D.D.C. 2011) (noting that *TMR Energy* is "the controlling law in [this] Circuit"), *aff'd*, 794 F.3d 591 (D.C. Cir. 2013).

With respect to the aforementioned first step in the test for dismissal based on *forum non conveniens*, Tatneft bolsters its argument that Ukraine is not an adequate alternative forum with its allegation that "the [Merits] Award is based on the wrongful actions of the Ukrainian courts, prosecutors, and court officials" and accordingly, there is no expectation of impartiality on behalf of the Ukrainian courts and in fact, an expectation that they would fail to enforce the Merits Award on the same "grounds they used to deprive Tatneft of its interests in Ukrtatnafta in the first place." Consol. Opp'n at 50. *Cf. Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 756 (S.D.N.Y. 2004) (holding that defendant's court system was an inadequate alternative forum because "the possibility that the Sovereign defendants could dictate the outcome of this dispute through their control of the [ ] courts would effectively foreclose the plaintiffs' right to pursue their claims"); *Cabiri v. Assasie-Gyimah*, 921 F. Supp. 1189, 1198-99 (S.D.N.Y. 1996) (the alternative forum was inadequate for plaintiff's claim that he was persecuted by that forum's government official).

Ukraine relies upon *In re Arbitration between Monegasque De Reassurances v Nak Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002), where the Second Circuit rejected the petitioner's "bare denunciations and sweeping generalizations" about Ukraine's judicial system, finding this was "speculation insufficient to defeat a finding of an adequate alternative forum." Notably, the court in *Monegasque* distinguished between situations where the Petitioner made sweeping generalizations and those where the "alternative forum [was] characterized by a complete absence of due process or an inability of the forum to provide substantial justice to the parties." 311 F.3d at 499; *see Rasoulzadeh v. Associated* Press, 574 F. Supp. 854, 861 (S.D.N.Y. 1983) (finding that a defendant's motion to dismiss for *forum non conveniens* should generally be denied if the foreign law is inadequate or the conditions in the foreign forum reveal that plaintiffs

are unlikely to obtain basic justice, and in this particular case, where the court had "no confidence whatsoever in the plaintiffs' ability to obtain justice at the hands of the courts" in Iran), *aff'd*, 767 F.2d 908 (2d Cir. 1985) (mem.). This Court finds that Tatneft's assertions more closely approximate allegations revealing why Tatneft will be unable to obtain basic justice in Ukraine: (1) because of the nature of the claims in the underlying dispute — which incriminate certain Ukrainian court orders and judicial actors — and (2) the procedural posture of this case in the Ukrainian courts prior to arbitration, rather than allegations containing sweeping generalizations about the inadequacy of the Ukrainian judicial system.

Accordingly, because the rationale in *TMR Energy* controls the specific *forum non conveniens* question before the Court, and further, Tatneft has raised a credible issue of its ability to obtain justice in Ukraine, this Court finds that Ukraine cannot show that an alternative forum exists. The Court need not thus engage in the balancing step of the *forum non conveniens* test. *See TMR Energy*, 411 F.3d at 303 ("The district court need not weigh any factors favoring dismissal . . . if no other forum to which the plaintiff may repair can grant the relief it may obtain in the forum it chose."). Ukraine's motion to dismiss on *forum non conveniens* grounds shall be DENIED.

### C. Ukraine's Motion for Jurisdictional Discovery

Ukraine argues that it should be permitted to engage in jurisdictional discovery as to the issue of whether Tatneft is a "private party" for purposes of applying the FSIA arbitration exception. *See* 28 U.S.C. §1605(a)(6) (a foreign state is not immune from the jurisdiction of U.S. courts in a case "in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties . . . .") "It is well established that the 'district

court has broad discretion in its resolution of [jurisdictional] discovery problems.'" *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1093 (D.C. Cir. 2008) (quoting *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir. 1983)). "This Circuit's standard for permitting jurisdictional discovery is quite liberal." *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003). "[H]owever, in order to get jurisdictional discovery a plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless* PLC, 148 F.3d 1080, 1090 (D.C. Cir. 1998). Moreover, "a plaintiff must make a 'detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce.'" *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 53 (D.D.C. 2003) (quoting *Phillip Morris*, 116 F. Supp. 2d at 130, No. 6). In the instant case, Respondent Ukraine wants to conduct jurisdictional discovery to demonstrate that the Court lacks jurisdiction because Tatneft is allegedly not a private party.

Tatneft contests Ukraine's request for jurisdictional discovery on grounds that Ukraine has not explained what additional facts from discovery "would affect the court's jurisdictional analysis" and thus, Tatneft argues that it is appropriate to deny discovery. Consol. Opp'n at 47, citing *Maqeleh*, 738 F.3d at 326; *see also Mwani v. Bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005) (confirming the district's court's discretion over a request for jurisdictional discovery and the denial of jurisdictional discovery where such discovery would not change the FSIA jurisdictional analysis); *Crist v Republic of Turkey*, 995 F. Supp. 5, 12 (D.D.C. 1998) ("Requests for jurisdictional discovery should be granted only if the plaintiff presents non-conclusory allegations that, if supplemented with additional information, will materially alter the court's analysis with regard to the applicability of the FSIA.") (internal quotation marks and citation omitted).

In light of the fact that this Court has already determined in Section III A. 1. herein that it will defer to the arbitral tribunal's determination on jurisdiction, which was upheld by the Paris Court of Appeal, Ukraine's request for jurisdictional discovery on the issue of whether Tatneft is a private party is moot. Furthermore, this Court has also determined that Section 1605(a)(1) is an alternative basis to conclude that the FSIA does not grant Ukraine immunity, and that section is not limited to proceedings to enforce arbitral awards made under agreement "with or for the benefit of a private party." Accordingly, Ukraine's request for jurisdictional discovery should be DENIED because Ukraine cannot show that additional discovery will change the Court's analysis of jurisdiction with regard to 28 U.S.C. § 1605(a)(6), and the Court also has jurisdiction pursuant to § 1605(a)(1), which does not mention a "private party."

### D. Ukraine's Motion to Stay

As previously noted herein, Tatneft's Notice of Arbitration was filed on May 21, 2008, and on September 28, 2010, the tribunal rendered an Award on Jurisdiction upholding its jurisdiction over the dispute between Tatneft and Ukraine. The tribunal held a subsequent hearing on the merits, from March 18, 2013 to March 27, 2013, and on July 29, 2014, the tribunal subsequently rendered a Merits Award holding Ukraine liable for violation of the "fair and equitable treatment" standard and ordering it to pay damages to Tatneft in the amount of $112 million plus interest. On August 27, 2015, Ukraine commenced a proceeding to set aside both the Jurisdictional Award and the Merits Award at the seat of the arbitration, in Paris, France, before the Paris Court of Appeal. "In French setting aside proceedings, the Paris Court of Appeal exercises *de novo* review . . . of all issues pertaining to the arbitral tribunals' jurisdiction and discretionary review of all other issues." Mot. to Stay at 7. On November 29, 2016, the Paris Court of Appeal issued a decision upholding both the Jurisdiction Award and the Merits Award.

Ukraine filed cassation proceedings before the French Court of Cassation on March 21, 2017, seeking to overturn the decision of the Paris Court of Appeal upholding the Merits Award. Tatneft moved to dismiss Ukraine's case until it has paid the Merits Award and the attorneys' fees and costs ordered by the Paris Court of Appeal pursuant to Article 1009-1 of the French Code, "which authorizes the Court of Cassation to remove a case from its docket if the petitioner has failed to comply with the term of the order that it plans to challenge." Opp'n to Stay at 10-11.

Ukraine's Motion to Stay is based on the pendency of the proceedings in the French Cassation Court; more specifically, Ukraine asserts that enforcement of the Merits Award would "enable multiplication of litigation" and "may lead to inconsistent results," and if the Award were enforced and then set aside, Ukraine would be forced to try to recover money that had already been paid out, which would pose a hardship. Motion to Stay at 8. Ukraine contends that the stay will be for a limited period of time, and as of the June 13, 2017 filing of the Motion to Stay, Ukraine estimated that "the French Cassation Court w[ould] likely deliver its decision in June 2018 or earlier." Motion to Stay at 14. Tatneft opposes the stay on grounds that the Merits Award has already been upheld by the Paris Court of Appeal and the mere possibility that the Court of Cassation will overturn the Merits Award is not enough to justify a stay.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of causes on its docket with an economy of time and effort for itself, for counsel, and for litigants. " *Landis v N. Am. Co. v. Am. Water Works & Elec. Co.*, 299 U.S. 248 (1936); *see also Enenlow v. New York Life Ins Co.*, 293 U.S. 379 (1935) (recognizing that a district court may stay a case "pending before it by virtue of its inherent power to control the progress of the cause so as to maintain the orderly processes of justice"). Pursuant to the New York

Convention, district courts have discretion to stay proceedings where "a parallel proceeding[12] is ongoing in the originating country and there is a possibility that the award will be set aside." *Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57, 71 (D.D.C. 2013), *aff'd*, 795 F.3d 200 (D.C. Cir. 2015) (citing *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F. 3d 310, 317 (2d Cir. 1998)). "[T]he adjournment of enforcement proceedings impedes the goals of arbitration – the expeditious resolution of disputes and the avoidance of protracted and expensive litigation" and thus, "a stay of confirmation should not be lightly granted." *Id.* Courts evaluate the following factors, with more weight given to the first and second factors, in determining whether or not to grant a stay: (1) the general objectives of the arbitration; (2) the status of the foreign proceedings and estimated time for resolution; (3) whether the award will receive greater scrutiny in the foreign proceedings under a less deferential standard of review; (4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce or set aside an award, (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity, (iii) whether they were initiated by the party trying to enforce the award in federal court, and (iv) whether they were initiated under circumstances evidencing intent to hinder or delay; (5) a balancing of the hardships to the parties, with the idea that if enforcement is postponed, the party seeking enforcement may receive "suitable security;" and (6) any other circumstances that could shift the balance in favor of either party. *Europcar*, 156 F. 3d at 317-18.

In this case, however, this Court has been informed that the parallel proceeding that was ongoing in the French Court of Cassation has been dismissed without prejudice. On November

---

[12] Ukraine notes that there are two additional "parallel" proceedings that were filed in Moscow and London, but its argument in support of the motion to stay focuses on the "parallel" proceeding in France, which is the country where the Award was rendered.

13, 2017, Tatneft filed a [31] Notice of Filing of a November 9, 2017 Radiation Order entered by the French Court of Cassation, which "dismisses without prejudice Ukraine's Court of Cassation appeal from the judgment of the Paris Court of Appeal that confirmed the Final Award in Tatneft's favor and rejected Ukraine's attempt to annul it." *See* Tatneft Notice of Filing, ECF No. 31, at 1.[13] In Ukraine's [32] Notice of Filing, Ukraine acknowledges that the case is inactive and explains that the "French Cassation Court will not examine the case until the petitioner proves that it has executed the decision the cassation of which is sought" and if Ukraine does not provide proof of this execution within two years, the case is closed.[14] *See* Ukraine Notice of Filing, ECF No. 32, at 1. "In this case, Ukraine has not paid 200,000 Euros in legal costs to Tatneft pursuant to the Paris Court of Appeal decision" and while Ukraine has "never denied its liability" for this payment, Tatneft must "apply for such writ of execution to the Ukrainian authorities for Ukraine to be able to make this payment[.]" *Id.* at 2.

Ukraine asserts however that it is now either preparing to challenge, or in the process of challenging, the Radiation Order issued by the French Court of Cassation through an abrogation proceeding. This Court notes that an abrogation proceeding does not directly challenge the Merits Award; instead, the purpose of this new proceeding is to "seek [ ] abrogation of the decree that introduced Article 1009-1 of the French Code of Civil Procedure before the French State Council"

---

[13] Ukraine explains that "'[r]adiation' is a measure of administration of justice . . . provided in Article 1009-1 of the French Code of Civil Procedure, which allows the First President of the Cassation Court [ ] to temporarily remove the case from the docket if 'the petition cannot prove that it has executed the decision the cassation of which is sought,' except if he/she finds 'that the execution would entail manifestly excessive consequences or that it is impossible for the petitioner to execute such decision.'" Ukraine's Reply to Stay at 8 (citations and quotations omitted).

[14] Ukraine disagrees with the Tatneft's characterization as a "dismissal without prejudice" and states that it is "more analogous to a 'stay.'" Ukraine's Reply to Stay at 9.

and in the event Ukraine prevails on that challenge, the Cassation Court's Radiation Order "will be annulled, and the French cassation proceeding will resume." *Id.*

The Court finds that a stay of the recognition and enforcement proceeding in this case is without merit because Ukraine's motion to stay is based on the idea that the ongoing French setting aside proceeding was a parallel proceeding that warranted consideration of the *Europcar* factors addressed in *Chevron*, but that setting aside proceeding is no longer active. Despite the fact that Ukraine has indicated its intent to challenge the French Court of Cassation's decision to "deactivate" the setting aside proceeding, Ukraine's prospective challenge is not a "parallel proceeding" that will have any immediate effect on the Paris Court of Appeals' upholding of the Merits Award; *i.e.*, the most that Ukraine can hope to accomplish is the reactivation of the setting aside proceeding in the French Court of Cassation. "[A] court abuses its discretion in ordering a stay 'of indefinite duration in the absence of a pressing need.'" *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 731-32 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 255). This Court sees no reason to further delay the proceedings in this case where there is no foreseeable conclusion to Ukraine's challenge of the underlying Merits Award in the French Cassation Court, particularly when Ukraine has already appealed from the Merits Award, and that Award was confirmed by the Paris Court of Appeal. Ukraine's motion to stay should thus be DENIED.

### E. Overview of Tatneft's Petition to Confirm Arbitration Award

United States courts have little discretion to refuse to confirm an award under the FAA, which provides that, in exercising its original jurisdiction over enforcing international arbitral awards, the district court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. *See Yusuf Ahmed Alghanim & Sons, W.I.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 20 (2d Cir.

1997) ("There is now considerable caselaw holding that, in an action to confirm an award rendered in, or under the law of, a foreign jurisdiction, the grounds for relief enumerated in Article V of the Convention are the only grounds available for setting aside an arbitral award."). The grounds for refusal enumerated in the Convention are as follows:

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

   (a) The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
   (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings . . . ; or
   (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration . . . ; or
   (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties . . . ; or
   (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:
   (a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or
   (b) The recognition or enforcement of the award would be contrary to the public policy of that country.

New York Convention, art. V, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (effective for the United States on Dec. 29, 1970).

As discussed above, courts "may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention." *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007) (quoting *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997)) (internal quotation marks omitted). Because "the New York Convention

31

provides only several narrow circumstances when a court may deny confirmation of an arbitral award, confirmation proceedings are generally summary in nature." *Int'l Trading and Indus. Inv. Co. v. DynCorp Aerospace Technology,* 763 F. Supp. 2d 12, 20 (D.C. Cir. 2011). "[T]he burden of establishing the requisite factual predicate to deny confirmation of an arbitral award rests with the party resisting confirmation," and "the showing required to avoid summary confirmation is high." *Id*. (quoting *Imperial Ethiopian Gov't v. Baruch-Foster Corp*., 535 F.2d 334, 336 (5th Cir. 1976); *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987)) (internal quotation marks omitted).

Ukraine has brought two defenses under Article V to the New York Convention against the enforcement of the Award, alleging that recognition and enforcement of the Merits Award should be refused because: 1) the composition of the arbitral tribunal was not in accordance with the agreement of the parties; and 2) it would be contrary to the public policy of the United States.

Upon review of Tatneft's Petition to Confirm the Arbitral Award, ECF No. 1, and Ukraine's Opposition to the Petition, ECF No. 22, this Court finds that it would be useful to have Tatneft reply to Ukraine's opposition prior to this Court ruling on the Petition, and accordingly, by no later than April 19, 2018, Tatneft shall provide a reply to Ukraine's opposition.

**IV. CONCLUSION**

For the foregoing reasons, the Court shall DENY Respondent Ukraine's Motion to Dismiss, DENY Respondent Ukraine's Motion for Leave to Take Jurisdictional Discovery, and DENY Respondent Ukraine's Motion to Stay.  Petitioner Tatneft is permitted until April 19, 2018 to file its reply to Ukraine's Opposition to Tatneft's Petition, and the Petition is HELD IN ABEYANCE until that time.  An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge