**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

PAO TATNEFT,

      Petitioner/Plaintiff,

      v.

UKRAINE,

      Respondent/Defendant.

Civil Action No. 17-582 (CKK)

---

**MEMORANDUM OPINION**
(June 1, 2021)

Pending before this Court is Respondent Ukraine's [67] Motion to Stay Execution of Judgment Without Bond.[1]  This Memorandum Opinion relates to a discrete post-Judgment issue in a case involving a long and tortuous history, first in arbitration and later in this Court.  As such, this Court incorporates by reference the background sections set forth in its March 19, 2018 Memorandum Opinion, ECF No. 34, and May 13, 2020 Memorandum Opinion, ECF No. 48, as supplemented by its August 24, 2020 Memorandum Opinion, ECF No. 50, and the Court will highlight below the relevant procedural background.

Pao Tatneft, formerly known as OAO Tatneft (herein referred to as "Tatneft"), initially brought this action to enforce a 2014 foreign arbitral award entered in favor of Petitioner Pao Tatneft and against Respondent Ukraine by the International Arbitral Tribunal in *OAO Tatneft v. Ukraine*,

---

[1] In connection with this Memorandum Opinion, the Court considered Respondent's [67] Motion to Stay Execution of Judgment Without Bond ("Ukraine Motion"); Petitioner's [69] Opposition to Respondent's Motion to Stay Execution of Judgment Without Bond ("Tatneft Opp'n"); Ukraine's [73] Reply in Support of Motion to Stay Execution of Judgment Without Bond ("Ukraine Reply"); and the record in this case.  In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

an arbitration seated in Paris, France and conducted pursuant to the Rules of the United Nations Commission on International Trade Law ("UNCITRAL"). Tatneft filed in this Court its [1] Petition to confirm the arbitral award on March 30, 2017. On August 24, 2020, this Court granted Tatneft's Petition for confirmation of the foreign arbitral award, *see* Order, ECF No. 49, and Memorandum Opinion, ECF No. 50. Thereafter, Ukraine filed an appeal, while the parties concurrently briefed their calculations of the proposed judgment amount with interest. On January 11, 2021, this Court entered its [60] Memorandum Opinion and Order affirming the judgment amount (with interest) calculated by Tatneft, and entered its [61] Judgment in the amount of $172,910,493.00.

Pursuant to Fed. R. Civ. P. 62(a), Tatneft waited thirty days before commencing discovery in aid of execution of the Judgment. "Because Ukraine did not pay the Judgment, post a bond or even indicate its intention to do either, on February 23, 2021, Tatneft served discovery requests on Ukraine," *see* Tatneft Opp'n, ECF No. 69, at 13;[2] Jonathan Blackman Decl., Ex. 1 [First Set of Interrogatories] and Ex. 2 [First Set of Requests for Production of Documents].[3] On March 22, 2021, pursuant to Federal Rules 45 and 69(a)(2), Tatneft issued nonparty subpoenas for service on several financial institutions, and Ukraine served its responses and objections shortly thereafter. Tatneft Opp'n, ECF No. 69, at 14. Two days thereafter, on March 29, 2021, Ukraine informed Tatneft's counsel of its intent to move for a stay of execution, *id.*, and it filed the instant Motion to Stay Execution of Judgment Without Bond on that same day. That Motion is ripe for this Court's consideration, and for the reasons set forth herein, this Court DENIES Ukraine's [67] Motion to Stay Execution of Judgment Without Bond.

---

[2] Page numbers cited by the Court refer to the page numbers assigned by the Court's Electronic Case Filing ("ECF") system.
[3] Mr. Blackman is one of the attorneys who represents Pao Tatneft in this matter.

I. LEGAL STANDARD

A party may obtain an automatic stay of execution of a money judgment against it pending appeal "by providing a bond or other security."  Fed. R. Civ. P. 62(b); *see Fleming, Zulack & Williamson, LLP v. Info. Super Station*, *LLC*, 215 F.R.D. 5, 8 (D.D.C. 2003) (noting that a stay under Rule 62 stops discovery in aid of execution).  The Court of Appeals for the District of Columbia Circuit has indicated that a "full supersedeas bond should be the requirement in normal circumstances" and that a district court has discretion to waive this requirement only in "unusual circumstances."  *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n,* 636 F.2d 755, 760 (D.C. Cir. 1980).  In ordinary cases, a bond is required where "there is some reasonable likelihood of the judgment debtor's inability or unwillingness to satisfy the judgment . . . and where posting adequate security is practicable."  *Id.*  When exercising discretion to excuse the requirement of a bond, courts consider whether an unsecured stay would "unduly endanger the judgment creditor's interest in ultimate recovery."  *Id.* at 760-61.  The party who seeks a stay without a bond bears the burden of proof to demonstrate the presence of  unusual circumstances.  *Godfrey v. Iverson*, No. 05-2044, 2007 WL 3001426, at *1 (D.D.C. Oct. 16, 2007).  Courts may also analyze a stay using the traditional stay factors articulated in *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

II. ARGUMENT

Ukraine argues that: (1) this Court should grant a stay without bond because Ukraine is a sovereign entity with funds to satisfy the judgment in the event that it is affirmed on appeal; and (2) the four-factor test in *Hilton* weighs in favor of a stay without bond.   These arguments will be addressed in turn below.

A. A Stay Without Bond based on Ukraine's Sovereign Status is Unwarranted

Ukraine asserts that a stay is warranted because of Ukraine's status as a "sovereign entity

with ample funds to satisfy the Court's judgment at the appropriate time." Ukraine Mot., ECF No. 67, at 6 (citing *Cruise Connections Charter Mgmt. I v. Attorney General of Canada*, 2014 U.S. Dist. LEXIS 204835, at *3 (D.D.C. Oct. 1, 2014)).  Ukraine argues first that there is a "presumption in favor of sovereign states" that relieves them of the concern upon which a bond requirement is predicated; *i.e.*, a likelihood or inability or unwillingness to pay.  Ukraine Mot., ECF No. 67, at 7; *see Matter of Arbitration of Certain Controversies Between Getma Int'l & Republic of Guinea*, 142 F. Supp. 3d 110, 118 n.10 (D.D.C. 2015) (noting that a "sovereign state . . . [is] presumably . . . solvent and will comply with legitimate order issued by courts in this country") (quotation omitted and alterations in original); *see also Novenergia II – Energy & Env'l (SCA) v. Kingdom of Spain*, 18-cv-01148 (TSC), 2020 WL 417794, at *6 (D.D.C. Jan. 27, 2020) (noting that "courts in this Circuit generally have not required foreign sovereigns to post security" because of the presumption of solvency and compliance with court orders).

Tatneft argues however that, "[c]ontrary to Ukraine's assertion, courts in this Circuit have made clear that the default rule requiring a bond to obtain a stay of execution applies to foreign sovereigns, just as it does to other defendants."  Tatneft Opp'n, ECF No. 69, at 16; *see, e.g. Crystallex Int'l Corp. v. Bolivarian Repub. of Venezuela*, 16cv-00661-RC, Order, ECF No. 44, at 2-3 (D.D.C. Aug. 8, 2017) (rejecting Venezuela's argument that with regard to foreign sovereigns, courts have "generally" declined to require the posting of security as a condition for obtaining a stay, and further noting that there is "no consensus that a foreign sovereign should be exempted from the default rule[.]") Tatneft distinguishes the cases cited by Ukraine in support of any alleged "rule" that foreign sovereigns are excused from posting a bond.  Tatneft notes that the court either "engage[d] in fact-intensive analysis," as in C*ruise Connections*, 2014 WL 12778302, at *1, or the court "d[id] not analyze the existence or basis for such a supposed "rule" at all," as in *Arbitration of Controversies Between Getma and Guinea*, 142 F. Supp. 3d at 188, where Guinea's ability to

pay was addressed in a footnote, and *Novenergia II*, 2020 WL 417794, at *6, where the court had not yet determined its jurisdiction under the New York Convention.

Moreover, Tatneft notes several cases from this Circuit where foreign sovereigns were not granted unsecured stays, thus demonstrating that "there is no consensus that a foreign sovereign should be exempted from the default rule" of a supersedeas bond.  Tatneft Opp'n, ECF No 69, at 16-17; *see, e.g., Baker v. Socialist People's Republic of Libyan Arab Jamahirya*, 810 F. Supp. 2d 90, 100 n.6 (D.D.C. 2011) (refusing to grant Syria's request for a stay and noting that if a stay had been granted, there would have been a condition that Syria post a supersedeas bond); *Stati v. Republic of Kazakhstan*, No. 1:14-cv-01638, Order, ECF No. 91, at2 (D.D.C. Nov. 13, 2018) (denying Kazakhstan's request for unsecured stay of execution of judgment, but noting that Kazakhstan was free "to obtain a stay by posting a bond in accordance with [ ] Rule 62(d).").  Accordingly, upon review of cases from this Circuit, the Court concludes that with regard to foreign sovereigns, there is no hardline exception to the default rule requiring a bond to obtain a stay of execution.  Instead, the Court must apply the standard set forth in the *Fed. Prescription* case and look to the circumstances of this case to determine if there are "unusual circumstances" that warrant waiving the requirement of a supersedeas bond.

Focusing on the circumstances of this case, the Court notes that the appeal by Ukraine from the judgment entered by this Court in favor of Tatneft's petition to confirm the arbitration award is not the first time Ukraine has taken an appeal in this case.  After this Court denied Ukraine's motion to stay the case, motion to dismiss the case, and motion to seek discovery, *see* Order, ECF No. 33, Memorandum Opinion, ECF No. 34, Ukraine filed a notice of appeal, and the case was stayed.  Subsequently, the Court of Appeals issued its mandate; the stay was lifted, and Ukraine filed a motion for supplemental briefing, which was denied.  *See* Order, ECF No. 47, Memorandum Opinion, ECF No. 48.  On August 24, 2020, this Court issued its [49] Order and [50] Memorandum

Opinion granting the confirmation of Tatneft's arbitration award, but leaving unresolved the exact calculation of the award (specifically, the interest calculation). Ukraine appealed from this Court's confirmation of the arbitral award and later amended its appeal to include the final calculation of the award, which was set out in a Judgment. *See* Judgment, ECF No. 61. That appeal is currently pending in the Court of the Appeals for the District of Columbia Circuit. Ukraine has now moved this Court for a stay of execution of the Judgment, without a bond, until after its appeal is resolved.

In its Motion, Ukraine alleges that there is a "presumption that a sovereign will pay an adverse judgment if it is affirmed on appeal[.]" Ukraine Mot., ECF No. 67, at 9; *but see Crystallex*, 16cv-00661-RC, Order, ECF No. 44, at 3-4 (D.D.C. Aug. 8, 2017) (refusing a stay without bond after finding affirmative evidence that the judgment debtor was not solvent, had a track record of failing to pay arbitral awards, and was taking active measures to avoid the judgment by repatriating its assets). In this case, Ukraine is a "sovereign entity whose over $40.8 billion in annual revenue and over $28.5 billion in reserves far exceed the judgment at issue." Ukraine Mot., ECF No. 67, at 8. The Court acknowledges that there is no dispute regarding Ukraine's solvency and ability to pay, *see* Ukraine Reply, ECF No. 73 at 9; rather, the dispute herein revolves around Ukraine's willingness and intention to pay.

Ukraine contends that it has "democratically enacted legislation for recognition and enforcement of foreign judgments and international arbitration awards, and a regular process for appropriating state funds to pay foreign judgments and international arbitral awards upon application by a creditor." Ukraine Mot., ECF No. 67 at 8 (citation omitted); Ukraine Reply, ECF No. 73, at 9. According to Ukraine, "payment is mandatory upon submission of a properly documented claim and prohibited until [such] submission[.]" Ukraine Reply, ECF No. 73, at 9. The process of submitting a "properly documented" claim (which is undefined by Ukraine) involves Tatneft going "to a [Ukrainian] civil court to obtain execution documents[.]" Ukraine

Reply, ECF No. 73, at 11.  This Court finds that Ukraine shifts the onus to Tatneft to "initiate the process that Ukrainian law provides for appropriating funds to pay the Award."  Ukraine Mot., ECF No. 67, at 9.  Notably, Ukraine does not point to anything that prohibits Tatneft from seeking to enforce the Judgment through other legal methods.

In addressing the proffer by Ukraine that Tatneft "can simply go to Ukraine to collect the judgment," Tatneft notes that this "fallback" by Ukraine to its "own domestic court system" demonstrates an unwillingness to satisfy the Judgment.  Tatneft Opp'n, ECF No. 69, at 19.  Tatneft explains that forcing it to go back to "the very courts [in Ukraine] that the arbitrators found impeded Tatneft's rights" defeats the New York Convention, which tries to ensure worldwide enforcement of foreign arbitral awards.[4]  *See generally TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 933 (D.C. Cir. 2007) ("The purpose of the New York Convention is to encourage recognition and enforcement of commercial arbitration agreements in international contracts.")

Ukraine argues next that it has a "consistent track record of recognizing, enforcing, and paying foreign judgments and arbitral awards pursuant to this procedure, including judgments and awards against Ukraine."  Ukraine Mot., ECF No. 67, at 8; Ukraine Reply, ECF No. 73, at 1.[5] Ukraine cites to a number of cases where arbitration awards against Ukraine were satisfied. The Court notes however that the awards referenced by Ukraine are relatively small (around $3-10 million) as opposed to the approximately $172 million awarded in this case.

Ukraine proffers also that a "bond requirement would contravene Ukraine's regular and

---

[4] Ukraine indicates that it would not be a civil court "whose judgments were at issue in the underlying arbitration."  Ukraine Reply, ECF No. 73, at 11.

[5] Ukraine qualifies its statement about having a "track record of paying foreign judgments and arbitral awards" by including the clause "where such applications are made in Ukraine."  Ukraine Mot., ECF No. 67, at 9.  Ukraine notes later that its "civil courts have a consistent track record of enforcing judgments against Ukraine even over Ukraine's objection."  Ukraine Reply, ECF No. 73, at 11.

democratically enacted process for appropriating state funds to pay foreign judgments." Ukraine Mot., ECF No. 76, at 1. Ukraine states that it has a "process for disbursing funds out of the State Treasury pursuant to foreign judgments and international arbitral awards," and "[a] well-informed Ukrainian official has affirmed that she is aware of no other [such] process[.]" Ukraine Reply, ECF No. 73, at 12. Exactly what this process entails remains unclear from the record before this Court, but in any case, Ukraine does not challenge that Tatneft may seek to enforce its Judgment through discovery in aid of execution of the Judgment. Also significantly absent from Ukraine's argument is any assurance of its intention to pay this arbitral award. *Compare Cruise Connections,* 2014 WL 12778302, at *1 (where Canada "affirmatively represented to the Court that it [would] satisfy any outstanding legal obligation after resolution of its appeal to the D.C. Circuit.")

While Ukraine points to factors that relate to its ability to pay a judgment (its solvency), this is not the same as affirming its willingness to pay a judgment. In fact, Tatneft argues that "[f]ar from providing any assurance, Ukraine's behavior and statements in this action, and related actions, evidence an "unwillingness to satisfy the judgment," underscoring how granting an unsecured stay would only unduly endanger Tatneft's recovery." Tatneft Opp'n, ECF No. 69, at 17. Tatneft notes that Ukraine has actively sought for the last six and a half years to avoid paying the arbitral award in this case and to overturn it, and this fact should be considered by the Court in its analysis. *See Gold Reserve Inc. v. Bolivarian Republic of Venezuela*, No. 14-2014, Order, ECF No. 58, at 3 (D.D.C. Feb. 24, 2016) (denying an unsecured stay and noting the significance of the fact that "Venezuela has expended a great deal of time and money in attempting to delay (by entirely legal means) the ultimate enforcement of the arbitration award").

In sum, Tatneft argues that "Ukraine has failed to meet its burden of showing any "unusual" or "special" circumstances that would justify departure from the default rule requiring a supersedeas bond to obtain a stay of execution." Tatneft Opp'n, ECF No. 69, at 17 (citing *Fed.*

8

*Prescription Serv.*, 636 F.2d at 760).   Under the circumstances present in this case, this Court finds that excusing the requirement of a supersedeas bond is unjustified.   Ukraine has been actively avoiding satisfaction of the Judgment for a number of years, albeit through legal means. Furthermore, Ukraine has not proffered anything to demonstrate its willingness to pay the Judgment, or that it has satisfied other judgments of this size.   Nor has Ukraine explained clearly why posting a bond is impracticable, although it would perhaps be burdensome.   Instead, Ukraine shifts the burden to Tatneft to enforce its Judgment through the Ukrainian court system, when Tatneft may enforce its Judgment through other legal means.   Accordingly, in light of all the circumstances in this case, Ukraine fails to demonstrate that there are "unusual circumstances" to justify a stay without the requirement of a bond.

     B. A Stay Without Bond is Unwarranted under the *Hilton* Four-Factor Test

Ukraine argues that a stay without bond is warranted under the traditional test for determining whether a stay should be awarded, which balances four equitable considerations:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of they stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

The first factor – a "strong showing" of likelihood of success – requires the presentation of a "serious legal question" raising "a fair ground for litigation."   Ukraine Mot., ECF No. 67, at 10 (citing *Wash. Metro. Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977)).   In this case, Ukraine proffers three grounds for its appeal – illegality, arbitrator bias, and *forum non conveniens*.   Ukraine explains that the seriousness of its argument regarding illegality is "demonstrated by the U.K. High Court of Justice's recent determination that Amruz and Seagroup share purchases were contrary to the law of Ukraine."   Ukraine Mot., ECF No. 67, at 10.   Tatneft

argues however that Ukraine *forfeited* that argument in *this* Court" and "controlling D.C. Circuit case law [ ] forecloses [that] argument here."  Tatneft Opp'n, ECF No. 69, at 21.  With regard to arbitrator bias, Ukraine appears to rely on *Belize Bank Ltd. v. Gov't of Belize*, 191 F. Supp. 3d 26, 35-38 (D.D.C. 2016), for the proposition that bias may be evaluated under Article V(1)(d).  Ukraine Mot., ECF No. 67, at 10.  Tatneft notes however that the *Belize* court ultimately refused to deny recognition of the award on grounds of alleged arbitrator bias.   Tatneft Opp'n, ECF No. 69, at 21-22.  Finally, with regard to the issue of *forum non conveniens*, Ukraine argues that "a categorical reading of [a 2005 case from this Circuit] is contrary to a 2007 Supreme Court case, Ukraine Reply, ECF No. 73, at 13-14, while Tatneft argues that D.C. Circuit precedent survives, as illustrated by a later D.C. Circuit decision.  Tatneft Opp'n, ECF No. 69, at 22.   While this Court finds that Tatneft has raised arguable defenses to each of Ukraine's three claims, such defenses do not negate that Ukraine has done enough to meet the standard of presenting "serious legal questions" raising a "fair ground for litigation."   Accordingly, the Court finds that this first *Hilton* factor weighs in favor of Ukraine.

With regard to the second factor – irreparable injury – Ukraine references "Tatneft's [allegedly] abusive discovery tactics" (i.e., requests for allegedly sensitive information made at the same time Ukraine is involved in an arbitration hearing) as a threat of irreparable injury to Ukraine in the absence of a stay.  Ukraine Mot., ECF No. 67, at 11.  Tatneft notes that it is not a party to the arbitration hearing. Tatneft Opp'n, ECF No. 69, at 8.[6]  Tatneft asserts further that Ukraine "absurdly speculates that Tatneft has propounded discovery not to enforce its Judgment but to procure sensitive and confidential information that can be passed on to the Russian Federation," and this claim is characterized by Tatneft as  "baseless."  *Id.*

---

[6] Tatneft challenges the proposition that Ukraine's counsel "does not the resources to both attend a hearing and respond to unrelated discovery requests[.]"  Tatneft Opp'n, ECF No. 69, at 22.

Tatneft explains also that this issue is moot, as Ukraine has already served its objections to the discovery requests, and "the parties have otherwise agreed to meet and confer about the third-party subpoenas only after the end of the unrelated arbitral hearing."  Tatneft Opp'n, ECF No. 69, at 22.   This Court notes that Ukraine's claim that the information sought by Tatneft is sensitive and could be shared with the Russian Federation has not been substantiated in any way by Ukraine.[7]  Nor does Ukraine explain why a confidentiality agreement or protective order could not resolve any confidentiality concerns.

Ukraine argues next that its sovereignty would be disrespected if a bond were to be required. In support of this principle, Ukraine cites several factually inapposite cases involving Native American tribes where infringement on sovereignty/self-governance was recognized as irreparable injury.   Ukraine alleges broadly, without further explanation, that requiring a bond when it is a solvent nation would "accord Ukraine different treatment than other similarly situated sovereigns," and it would "divert resources from other uses" while Ukraine deals with the ongoing pandemic. Ukraine Mot., ECF No. 67, at 11.   Tatneft contends however that "adhering to the default requirement for a bond does not force Ukraine to post a bond;" rather, a stay conditioned on a bond "simply precludes Ukraine from delaying Tatneft's discovery efforts in aid of execution."  Tatneft Opp'n, ECF No. 69, at 24.   The Court finds that the arguments proffered by Ukraine – which are unsupported by relevant case law or facts– fail to demonstrate irreparable injury, and accordingly, this second factor weighs in favor of Tatneft.

With regard to the third factor – injury to Tatneft – Ukraine argues that "Tatneft's interest in proceeding with discovery in aid of execution is weak because it can enforce the judgment by initiating the appropriate process in Ukraine without any discovery at all."  Ukraine Mot., ECF No.

---

[7] Tatneft notes that it is a private party and not an organization included on the U.S. Government sanctions list.  Tatneft Opp'n, ECF No. 69, at 23.

67, at 11.[8]  This argument is completely without merit.  Judgment was entered by this Court on January 11, 2021, in the amount of $172,910,493.00, after legal proceedings spanning years, first in arbitration and then in this Court.  Tatneft is entitled to enforce that judgment through any legal means, and Ukraine has not challenged the legality of Tatneft's enforcement efforts.

In contrast, Tatneft argues that if this Court were to grant an unsecured stay, it would "substantially impair Tatneft's ability to identify assets of Ukraine and enforce its Judgment by judicial means" when faced with "Ukraine's consistently displayed unwillingness to voluntarily pay the Judgment."  Tatneft Opp'n, ECF No. 69, at 24.  Indeed, the record in this case supports Tatneft's assertion that, while Ukraine is solvent and able to pay the judgment, Ukraine has shown no intention to pay the Judgment.  Accordingly, this third factor weighs in favor of Tatneft.

Finally, with regard to public interest, which is the fourth factor, Ukraine argues that there is a "strong public interest" in protecting Ukraine, an American ally, "from abusive discovery that could facilitate Russian aggression."  Ukraine Mot., ECF No. 67, at 12.  As previously noted herein, this vague claim of "Russian aggression" is unsupported by facts.  Ukraine argues further that its sovereignty should be respected by "allowing the country to follow its own appropriations process . . . "  *Id.*  Ukraine then launches into a specious argument about United States foreign policy providing financial assistance to the people of Ukraine and how this justifies a stay without a bond. The Court finds that this argument has absolutely no bearing on the public interest factor at issue in this case.  In contrast, the Court focuses on the New York Convention underlying the enforcement of foreign arbitral awards.  This Court concludes that it is in the public interest to support a timely and efficient process for recognition and execution of foreign arbitral awards.  Accordingly, this

---

[8] Ukraine includes a baffling and irrelevant argument about how Tatneft was willing to undertake a large risk in engaging in a "speculative investment" and how the risk here is less.  Ukraine Mot., ECF No. 67, at 12.

fourth factor of public interest weighs in favor of Tatneft and against granting a stay without the requirement of a supersedeas bond.  In sum, three of the four *Hilton* factors clearly favor Tatneft, and accordingly, a stay without bond is unwarranted.

    III. CONCLUSION

    This Court has analyzed Ukraine's Motion requesting a stay without bond under both the *Fed. Prescription Serv., Inc.* standard and the *Hilton* four-factor test, and concluded that under the circumstances in this case, a stay without bond is unwarranted.  Accordingly, Ukraine's [67] Motion shall be DENIED.  A separate Order accompanies this Memorandum Opinion.


DATED: June 1, 2021                    _____/s/_____
                                       COLLEEN KOLLAR-KOTELLY
                                       UNITED STATES DISTRICT JUDGE